UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JULIO NOVA,

                              Plaintiff,

        v.

DANIEL F. MARTUSCELLO, *et al.*[1]

                              Defendants.

No. 24-CV-1574 (KMK)

OPINION & ORDER

---

Appearances:

Julio Nova
Dannemora, NY
*Pro Se Plaintiff*

Robert Cosgrove Feliu, Esq.
NYS Office of The Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Julio Nova ("Nova" or "Plaintiff") brings this Action against Daniel F. Martuscello

("Martuscello"), Michael Blot ("Blot"), Robert Mitchell ("Mitchell"), D. Rabideau ("Rabieau"),

M. Macura ("Macura"), Kyle J. Brooks ("Brooks"), Christian Alemany ("Alemany"), Eduardo

Esquere ("Esquere") (collectively, "Defendants"), alleging violations of his Eighth, Fourth, and

---

[1] Although Daniel F. Martuscello is referred to as "Daniel F. Martuscelli" on the docket, (*see generally* Dkt.), both Parties refer to him as "Martuscello" in their papers, (*see, e.g.,* Am. Compl. ("AC") ¶ 43 (Dkt. No. 23); Defs. Mem. 13), and therefore the Court will refer to him as such.

Fourteenth Amendment rights, as well as a conspiracy to violate his constitutional rights and the intentional infliction of emotional distress.  (*See generally* AC.)[2]

Currently before the Court are Martuscello, Blot, Mitchell, and Rabieau's (collectively, "moving Defendants") Motion to Dismiss pursuant to Fed. R. Civ. Pro. ("Rule") 12(b)(6).  (*See generally* Mot. to Dismiss ("Defs. Mot.") (Dkt. No. 35).)  For the following reasons, the Court grants the Motion in part and denies it in part.

## I.   Background

### A.  Factual Background

The Court will take all well-pleaded factual allegations in the Complaint as true for the purposes of this Motion.  *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023) ("The factual summary below is derived from the allegations in the [complaint], which we must accept as true in reviewing a motion to dismiss.").

#### 1.  The Parties

Plaintiff is an inmate currently incarcerated at Clinton Correctional Facility.  (*See* Dkt. No. 44.)  At the time of the events in this action, Plaintiff was housed at the Green Haven Correctional Facility ("Green Haven").  (*See* AC ¶ 1.)  At all times relevant to this Action Martuscello was the Acting Commissioner of the New York Department of Corrections and Community Supervision ("NYDOCCS"), (*see id*. ¶ 5); Blot was a Captain at Green Haven, (*see id*. ¶ 6); Rabideau was a Superintendent, (*see id*. ¶ 7); Mitchell was Director of the Correctional Emergency Response Team (the "CERT" team), (*see id*. ¶ 8); Therrien was a Sergeant of the

---

[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

CERT team, (*see id.* ¶ 9); Brooks, Alemany, and Esquere were corrections officers on the CERT

team, (*see id.* ¶¶ 10–12); and Macura was a corrections officer, (*see id.* ¶ 13).

  2. <u>Warning from Unknown Corrections Officer</u>

  At some time on or before September 20, 2023, Plaintiff was advised by an unknown

corrections officer that "because of Plaintiff's reputation as a jail-house lawyer" he was being

targeted by a group of corrections officers known as the "beat up squad." (*See id.* ¶ 37.) On

September 20, 2023, Plaintiff informed Blot and requested protection. (*See id.* ¶ 38.) In

response, Blot instructed several corrections officers to handcuff Plaintiff and to return him to his

cell. (*See id.*) Plaintiff alleges that Blot took no action to investigate Plaintiff's allegations that

there was a threat to his safety. (*See id.* ¶ 39.)

  3. <u>Altercation with Prison Guard and Subsequent Placement in Solitary Confinement</u>

  On September 24, 2023, Plaintiff got into an altercation with a prison guard, L. Rhoom,

because Rhoom "without warning, snatched Plaintiff's blanke[t] from his cell gate." (*See id.* ¶

57.) As a result of this altercation, Plaintiff was placed in the Special Housing Unit ("SHU") for

eleven days. (*See id.* ¶ 58.) The cell Plaintiff was placed in contained a toilet which did not

flush for the entire eleven-day period. (*See id.* ¶ 59.) On September 25, 2023, Plaintiff was

served with a misbehavior report related to this altercation, which charged him with violent

conduct, an assault on prison staff, and "interference." (*See id.* ¶ 60.)

  4. <u>Assault Against Plaintiff</u>

  On October 4, 2023, at around 7:20 P.M., Blot and Therrien walked past Plaintiff's SHU

cell. (*See id.* ¶¶ 19, 75.) Blot said, "that is Nova right[]there." (*See id.*) Minutes later, Brooks,

Alemany, and Esquere turned off the lights to Plaintiff's cell, entered, and slammed him against

the wall. (*See id.* ¶¶ 19, 81.) Defendants told Plaintiff to stop resisting, although he alleges that

he was not resisting.  (*See id*. ¶ 19.)  Though he was handcuffed, Brooks, Alemany, and Esquere hit him with their fists and knees, and placed their feet on Plaintiff's testicles.  (*See id*.)  Further, Brooks, Alemany, and Esquere stripped Plaintiff and searched him. (*See id*. ¶¶ 67–68.) Subsequently, Plaintiff was "bent over" and "dragged" to Green Haven's clinic, naked.  (*See id*. ¶¶ 19, 68.)

Plaintiff alleges that at the clinic, he heard and saw Therrien inform Brooks, Alemany, and Esquere that "Blot was taking care [of] the video evidence, and that all they need[ed] [] to do [was] claim injuries to make it look as if Plaintiff had assaulted them."  (*See id*. ¶ 78.)  Plaintiff alleges that Blot and Therrien subsequently destroyed video evidence from body-worn cameras and surveillance footage to "cover[]up the gang assault."  (*See id*. ¶ 80.)

Plaintiff alleges that Therrien was present during the assault, but did not intervene at any point.  (*See id*. ¶¶ 21–24.)  Plaintiff also alleges that Martuscello, Mitchell, Blot, and Therrien were aware of Brooks, Alemany, and Esquere's violent propensities based on those Defendants' repeated acts of misconduct and use of excessive force against prisoners.  (*See id*. ¶¶ 25–36.)

The same day (October 4, 2023), Plaintiff was charged with violent conduct, assault on staff, and "direct order" as a result of the incident.  (*See id*. ¶ 60.)  As a result of this incident, Plaintiff alleges he suffered psychological harm and urinated blood for five days.  (*See id*. ¶ 20.) Plaintiff alleges that Defendants knew of another civil rights case brought by Plaintiff against Green Haven officials, *Nova v. Rocker*, No. 23-CV-6170 (W.D.N.Y.), and that they assaulted him in order to intimidate him and prevent him from continuing to pursue his claims in that case. (*See id*. ¶ 88.)

5.  Further Discipline

On October 5, 2023, Plaintiff was transferred to the Upstate Correction facility.  (*See id*. ¶ 115.)  He was placed in a cell that was "barren" and was "about the size of an elevator."  (*See id*.)  While there, he was not permitted to take part in activities, programs, or classes.  (*See id*. ¶ 116.)  The lights were kept on all day and all night, causing Plaintiff sleep deprivation.  (*See id*. ¶ 117.)

Plaintiff claims that at some unspecified point, the disciplinary charges resulting from the October 4, 2023 assault were dropped.[3]  (*See id*. ¶ 61.)  A telephonic hearing as to the September 24 incident—led by Therrien—was held on October 20, 2023.  (*See id*. ¶ 62.)  Plaintiff was given a punishment of 270 days of confinement in the SHU for the September 24 incident.  (*See id*. ¶ 61.)  Plaintiff alleges that he did not receive a written determination for as to why his conduct merited extended disciplinary confinement.  (*See id*. ¶ 63.)

B.  Procedural Background

Plaintiff initiated this Action on February 29, 2024.  (*See* Compl. (Dkt. No. 1).)  On July 25, 2024, Plaintiff filed the Amended Complaint ("AC").  (*See* AC.)  Pursuant to a briefing schedule set by the Court, (*see* Dkt Nos. 32, 33), moving Defendants filed their Motion to Dismiss on December 20, 2024, (*see* Mot. to Dismiss Pl. Am. Compl. ("Defs.' Mot.") (Dkt. No. 35); Defs.' Mem. of Law in Supp. Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 36)).  On February

---

[3] In support of this point, Plaintiff attaches a disciplinary incident summary dated October 25, 2023.  (*See* AC, Ex. A ("Discipline Summary") 27 (Dkt. No. 23).)  Although the summary shows that Plaintiff was sentenced to 270 days in the SHU for the September 24 incident, it does not appear to show that the two charges from the October 4 incident were dropped.  (*See id*.)  In fact, a handwritten note on the incident report says: "Attached are your current sanctions. You do still have two tickets pending as well."  (*See id*.)  Since the summary shows two tickets pending for the October 4 incident, the Court presumes that the latter comment suggests the disciplinary determination was still pending at the time this disciplinary summary was generated.

25, 2025, Plaintiff filed a letter requesting an extension to respond to Defendants' Motion.  (*See* Dkt. No. 37.)  On April 10, 2025, Plaintiff filed an affirmation containing a number of exhibits, as well as his Opposition.  (*See* Nova Aff. (Dkt. No. 38); Pl. Opp. to Defs. Mot. to Dismiss ("Pl. Opp.") (Dkt. No. 38).) [4]  On April 14, 2025, moving Defendants sought, and were granted, an extension of time to respond to Plaintiffs' affirmation.  (*See* Dkt. Nos. 39, 45.)  Defendants' Reply was filed on May 23, 2025.  (*See* Defs. Rep. in Supp. of Mot. to Dismiss ("Defs. Rep.") (Dkt. No. 47).)

## II.  <u>Discussion</u>

### A.  <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a plaintiff's claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion to dismiss stage, a court must "draw all reasonable inferences in the [plaintiff's] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *United States v. Medtronic, Inc.*, No. 18-CV-1628, 2024 WL 4165522, at *3 (S.D.N.Y. Sept. 12, 2024) (quoting *Faber v. 41Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

To survive a motion to dismiss, the Supreme Court has held that a complaint "does not need detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  However, "a [plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[4] Plaintiff's Opposition can be found on pages 49 to 120 of his Affirmation.  For clarity, the Court will refer to the Affirmation and its accompanying exhibits as the "Nova Aff.," and pages 49 to 120 as "Pl. Opp."

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555.

 "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  Certainly, if

a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

 When a plaintiff proceeds pro se, the Court may consider "materials outside the

complaint to the extent that they are consistent with the allegations in the complaint." *Bailon v.*

*Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *5 (S.D.N.Y. Sept. 13, 2023)

(quotation marks omitted), including "documents that a pro se litigant attaches to his opposition

papers," *Barkai v. Neuendorf*, No. 21-CV-4060, 2024 WL 710315, at *4 (S.D.N.Y. Feb. 21,

2024) (quoting *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15,

2010) (italics omitted)).  Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe his complaint liberally and interpret it to raise the strongest arguments that it suggests."  *Mejia v. Carter*, No. 21-CV-9049, 2022 WL 17653826, at *3 (S.D.N.Y. Nov. 2, 2022) (internal quotations and citations omitted), *report and recommendation adopted*, No. 21-CV-9049, 2022 WL 17624254 (S.D.N.Y. Dec. 13, 2022).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Barkai*, 2024 WL 710315, at *4 (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  <u>Analysis</u>

The Court construes the Plaintiff's AC to raise the following claims: (1) an Eighth Amendment excessive force claim against Brooks, Alemany, and Esquere; (2) a failure to protect claim against Therrien, Martuscello, Mitchell, and Blot, (3) a failure to intervene claim against Therrien; (4) a state-created danger claim against Martuscello; (5) a Fourteenth Amendment due process claim against Therrien and Macura, (6) a Fourth Amendment claim against Brooks, Alemany, and Esquere, (7) a Fourteenth Amendment equal protection claim against Brooks, Alemany, Esquere, Therrien, Blot, and Rabideau, (8) a conspiracy claim against Brooks, Alemany, Esquere, Therrien, Blot, and Rabideau; and (9) an Eighth Amendment conditions of confinement claim against unidentified Defendants.  (*See generally* AC.)

Moving Defendants appear to challenge some claims that were only raised as to the unserved (and therefore non-moving) Defendants.[5] " It is well-established that '[d]efendants do not have standing to move to dismiss the substantive claims not actually asserted against them.'" *Griffin v. City of New York*, No. 22-CV-8521, 2025 WL 2198715, at *5 (S.D.N.Y. Aug. 1, 2025) (quoting *Bd. of Managers of Trump Tower at City Ctr. Condo. v Palazzolo*, 346 F. Supp. 3d 432, 462 n.4 (S.D.N.Y. 2013)). "The individuals who have not yet been served 'have not moved to dismiss the claims against them,' and '[t]o the extent that the officers, once they have been properly served and given notice of the claims against them, wish to move to dismiss on grounds such as failure to state a claim or qualified immunity, they will be permitted to do so.'" *Id*. (quoting *Bell v. City of New York*, 2013 WL 6268083, at *3 (E.D.N.Y. Dec. 4, 2013)). The Court therefore denies the Motion to the extent it requests dismissal of claims made against unserved Defendants. (*See* Defs. Mem. 23–24, 30–31.) Moreover, the Court addresses the sufficiency of Plaintiff's allegations only to the extent required to rule on the present Motion.

### 1. Eighth Amendment Failure to Protect

Plaintiff raises a failure to protect claim against Martuscello, Blot, Mitchell, and Therrien. (*See* AC ¶¶ 30–46.) Moving Defendants argue that the AC fails to demonstrate Martuscello, Mitchell, and Blot's personal involvement in the constitutional violations associated with the assault. (*See* Defs. Mem. 12–19.) Furthermore, Defendants argue that Plaintiff's failure to protect claim against Blot fails to state a claim. (*See* Defs. Mem. 19–20.) For the following reasons, the Court grants the Motion as to Martuscello, Mitchell, and Blot.

---

[5] The Court will refer to Brooks, Alemany, Esquere and Macura as "non-moving Defendants."

a.  Failure to Protect: Blot

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  *Bright v. Annucci*, No. 18-CV-11111, 2021 WL 4461682, at *14 (S.D.N.Y. Sept. 28, 2021) (quoting *Hayes v. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).  This includes a "general duty to protect prisoners" where a corrections officer "has reason to know that excessive force will be used."  *See id.* (internal citations and quotation marks omitted).  "However, not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'"  *Lefler v. Ferraro*, No. 22-CV-6468, 2025 WL 489331, at *2 (W.D.N.Y. Feb. 13, 2025) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "Therefore, an inmate seeking to establish an Eighth Amendment violation for failure to protect must prove (1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-conditions cases' is 'one of deliberate indifference to inmate health or safety.'"  *Id.* (quoting *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020)).

"Analysis of a failure to protect claim, as with other deliberate indifference claims, 'consists of an objective and a subjective component.'"  *Matagrano v. Levitt*, No. 21-CV-6415, 2022 WL 798363, at *4 (W.D.N.Y. Mar. 16, 2022) (quoting *Farmer*, 511 U.S. at 833–34, 837).  "Objectively, the inmate must plead that 'conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health[.]'"  *Id.* (quoting *Vega v. Semple*, 963 F.3d 259, 259 (2d Cir. 2020)).  "Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'"  *Highley v. BAART Clinic*, No. 23-CV-569, 2024 WL 4487230, at *7 (D. Vt. July

22, 2024), *report and recommendation adopted sub nom. Highley v. Baart's Clinic*, No. 23-CV-569, 2024 WL 4224105 (D. Vt. Sept. 18, 2024).

"Specifically, a plaintiff must establish that the prison official knew of a substantial risk to inmate health or safety and nonetheless disregarded it." *Matagrano*, 2022 WL 798363, at *4 (quoting *Farmer*, 511 U.S. at 837). "Deliberate indifference is present when 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

"Allegations that a prisoner made corrections officers aware of 'generalized safety concerns or vague concerns of future assault by unknown individuals' are not sufficient to state a failure to protect claim." *Lefler*, 2025 WL 489331, at *3 (quoting *Anselmo v. Kirkpatrick*, No. 19-CV-350, 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019)). "However, when an inmate alleges that he informed 'corrections officers about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim of failure to protect.'" *Id.* (quoting *Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008)).

Here, Plaintiff alleges that an unidentified correctional officer told him that he was being targeted by a "beat-up squad" because of his "reputation as a [jailhouse] lawyer." (*See* AC ¶ 37.) Plaintiff alleges he then "personally asked [] Blot for protection," but that Blot instead directed Plaintiff to be handcuffed and returned to his cell. (*See* AC ¶ 38.) Plaintiff's complaint to Blot did not specify the individuals threatening Plaintiff, the nature of the threats made against him, or whether the harm was likely to occur imminently.[6] (*See id.*) Accordingly, it entails precisely the

---

[6] The Court does not suggest that Plaintiff was *required* to have identified specific threatening individuals in order to make out a failure to protect claim. However, the lack of any

kind of "generalized safety concerns" or "vague concerns of future assault by unknown individuals" that other courts routinely find insufficient to state a claim for failure to protect. *Anselmo*, 2019 WL 2137469, at *4; *see also Robinson v. Spanno*, No. 20-CV-642, 2021 WL 1109053, at *5 (S.D.N.Y. Mar. 23, 2021) (rejecting the plaintiff's failure to protect claim where the information provided to the defendant was insufficiently detailed to apprise the defendant of a substantial risk of harm); *Marshall v. Griffin*, No. 18-CV-6673, 2020 WL 1244367, at *9 (S.D.N.Y. Mar. 16, 2020) (concluding that the plaintiff's claims that he had voiced concerns about a "Beat Down/Goon Squad" were too general to apprise the defendant of a substantial risk of harm); *cf. Lefler*, 2025 WL 489331, at *3 (concluding that the plaintiff had adequately notified the defendants such that they could be held liable for failing to protect him where "[the plaintiff] specifically warned [the defendants] that there was going to be a fight in the ball yard during their watch *on the date in question*, he warned [the defendants] that he would be attacked *by a specific individual* in the ball yard, and that after this warning, he was assaulted by that individual." (emphasis added)); *Villa v. Westchester County*, No. 19-CV-428, 2020 WL 4505968, at *7 (S.D.N.Y. Aug. 5, 2020) (denying a motion to dismiss a plaintiff's failure to protect claim where "[the plaintiff] allegedly told a correction officer about the existence of *one specific potential threat* from an inmate and was then attacked by that very inmate" (emphasis added)).

For these reasons, the Court concludes that Plaintiff has failed to plausibly allege a failure to protect claim against Blot. Furthermore, "it is unnecessary to decide whether [Plaintiff] has satisfied the objective prong of *Farmer* because he has failed to satisfy the subjective prong."

---

identifying information about the individuals threatening Plaintiff's safety contributes to the overall lack of specificity in Plaintiff's complaint to Blot.

*Marshall*, 2020 WL 1244367, at *8 (internal quotation marks omitted) (quoting *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013)).

          b.  Failure to Protect:  Martuscello and Mitchell

Moving Defendants argue that Plaintiff's failure to protect claims against Martuscello and Mitchell fail to sufficiently allege their personal involvement in his assault.  (*See* Defs. Mem. 14–16.)  The Court agrees.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Sterling v. Akinyombo*, No. 20-CV-10804, 2022 WL 2657223, at *4 (S.D.N.Y. July 8, 2022) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation and quotation marks omitted); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement because the "[p]laintiff's general allegation that all defendants were involved in the alleged constitutional violations does not rescue the claims against" a particular defendant (quotation marks and citation omitted)).  Accordingly, "a plaintiff may not rely on a special test for supervisory liability" instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti*, 983 F.3d at 616–18.

Plaintiff appears to allege that Martuscello and Mitchell's supervisory roles at Green Haven are sufficient to satisfy the personal involvement requirement of a Section 1983 claim. (*See* AC ¶¶ 43–44.)  The AC states that "as the Commissioner of [NY]DOCCS," Martuscello "is responsible for ensuring that all employees obey the Constitution and laws of the United States,"

(*see* AC ¶ 43), and that because Martuscello was "responsible for the management of the day-to-day conditions within [NYDOCCS]" he was "personally aware of and responsible for inspecting, reviewing, and authorizing [NYDOCCS'] condition," (*see id*). As to Mitchell, the AC notes that Mitchell was the "Director of the CERT Team" and was therefore responsible for ensuring that the "CERT Team correction officers obey the Constitution [] and laws of the United States," and that as a result of his review of the team's performance, he "is personally aware and responsible for inspecting, reviewing, and authorizing all facilities searches." (*See* AC ¶ 44.) These allegations, at bottom, rely on nothing more than Martuscello and Mitchell's roles as supervisors to plead their personal involvement. The prevailing view in the caselaw is that this is insufficient. *See Dawson v. Beebe*, No. 24-CV-1548, 2025 WL 2402289, at *8 (S.D.N.Y. Aug. 19, 2025) (allegation that supervisory defendant "knew" about a constitutional violation and "allowed" it to happen insufficient to plead personal involvement); *Ndemenoh v. Boudreau*, No. 20-CV-4492, 2023 WL 6122852, at *6 (S.D.N.Y. Sept. 19, 2023) (rejecting that an allegation that a supervisory defendant "tacitly or expressly approved or ratified the Constitutionally violative behavior" was sufficient to plead personal involvement (alterations adopted)).

The only specific allegation Plaintiff makes as to Martuscello and Mitchell is that they were "aware of a well-known pattern of CERT team members using excessive force against inmates." (*See* AC ¶¶ 43–44.) In particular, Plaintiff alleges that there were a number of civil complaints and prisoners' grievances which he argues placed or should have placed Martuscello and Mitchell on notice about Brooks, Alemany, and Esquere's violent propensities. (*See* AC ¶¶ 30–36.) In support of this allegation, Plaintiff points to: (1) one case in which an inmate at a different prison (Sing Sing) alleged officers on the CERT team used excessive force against him, (*see* AC ¶ 16); (2) an investigative reporting series that documented the use of force in the New

York prison system (including Green Haven), (*see* Nova Aff., Ex. C; Pl. Opp. 70); as well as (3) a number of unspecified civil complaints and prisoners' grievances, (*see* Pl. Opp. 78).

These allegations are insufficient to establish Martuscello and Mitchell's personal involvement.  As to the first allegation—that a prior lawsuit against CERT officers for use of force at Sing Sing put Martuscello and Mitchell on notice of the threat to Plaintiff's safety—the Court concludes that the AC fails to establish how Martuscello and Mitchell had knowledge of that incident.  *See Gantt v. Ferrara*, No. 15-CV-7661, 2018 WL 4636991, at *7 (S.D.N.Y. Sept. 27, 2018) (holding that allegations that a correctional officer had been the subject of multiple complaints and investigations insufficient to hold his supervisor liable where the complaint did not suggest "[the supervisor] himself actually had information about these lawsuits"); *Guillory v. Cuomo*, No. 14-CV-971, 2014 WL 11173632, at *4 (N.D.N.Y. Dec. 2, 2014) (dismissing claim for lack of personal involvement where "[the p]laintiff cite[d] to his four prior lawsuits but d[id] not allege how any defendant [named] . . . had any involvement or any knowledge of any of the incidents described in any of those lawsuits").  The second and third allegations—that an investigative report detailing the use of force in prison and general references to prisoner grievances put Defendants on notice of the threat to Plaintiff's safety—are too general to plausibly plead personal involvement.  *See Powell v. City of Jamestown*, No. 21-CV-721, 2022 WL 1913581, at *14 (W.D.N.Y. June 3, 2022) ("[T]he [c]omplaint's allegation that Defendants received complaints in prior (unspecified) lawsuits [] is insufficient to show that the supervisory defendants knew or should have known of a risk of unlawful conduct, or that they deliberately or recklessly disregarded that risk." (internal citation omitted)); *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *34 (S.D.N.Y. Mar. 26, 2021) (concluding that generic allegations that a defendant was aware of disciplinary violations by subordinates was

insufficient to establish personal involvement); *Gantt*, 2018 WL 4636991, at *7 (rejecting allegations that the defendant knew of prior complaints and grievances as sufficient to allege personal involvement where "[the plaintiff] provide[d] no detail of these other complaints, such as when they were filed and whether the alleged misconduct was similar"). For these reasons, the Court concludes that Plaintiff has failed to sufficiently allege Martuscello and Mitchell's personal involvement in his Eighth Amendment failure to protect claim.

　　　2. "State-Created Danger"

Plaintiff also raises a "state-created danger" claim against Martuscello. (*See* Pl. Opp. 80–86.) "The state-created danger doctrine applies when 'a state actor aids and abets a private party in subjecting a citizen to unwarranted physical harm.'" *Greenland v. Municipality of Westchester County*, No. 18-CV-3157, 2019 WL 4640061, at *5 (S.D.N.Y. Sept. 24, 2019) (quoting *Golian v. N.Y.C. Admin. for Children Servs.*, 282 F. Supp. 3d 718, 730 (S.D.N.Y. 2017)); *see also Spiezio v. Martinez*, 653 F. Supp. 3d 8, 29(N.D.N.Y. 2023) (noting that state-created danger theory deals with the relationship between state actors and *private violence*, and collecting cases). Here, Plaintiff's state-related danger claim posits that Martuscello, the Acting Director of NYDOCCS, failed to protect inmates from the CERT team's physical abuse. As both of the relevant parties here are state actors, the Court concludes that the state-created danger theory is inapplicable to Plaintiff's allegations. *See Laprade v. Plainfield Bd. of Educ.*, No. 23-CV-748, 2025 WL 276272, at *2 (D. Conn. Jan. 23, 2025) (rejecting a state-created danger claim where the harm was perpetrated "directly by [a] state actor" (quotations and citation omitted)); *Spiezio*, 653 F. Supp. 3d at 29–30 (concluding that the state-created danger theory did not appear to be applicable where all of the plaintiff's allegations "relate[d] to [the defendant's] role as a state actor" (emphasis omitted)); *Bourn v. Town of Bennington*, No. 09-CV-212, 2012 WL 2396875,

at *4 (D. Vt. June 25, 2012) (rejecting a state-created danger theory where no private actors were alleged to have been involved).

    3.  <u>Conspiracy</u>

The Court construes Plaintiff's allegations to raise conspiracy claims against Therrien, Blot, and the non-moving Defendants under Section 1983. (*See* AC ¶¶ 78–95.)  Specifically, Plaintiff appears to advance two related—but distinct—conspiracy claims under Section 1983: first, that Defendants conspired to cover-up the use excessive of force against him; and second, that Defendants conspired to assault him in retaliation for his work as a "jailhouse lawyer."  (*See* AC ¶¶ 78–95.)

"A conspiracy claim under Section 1983 requires (1) an agreement between two or more state actors to inflict an unconstitutional injury on a plaintiff and (2) an overt act committed in furtherance of that goal." *Salley v. Capra*, No. 23-CV-4566, 2025 WL 950991, at *10 (S.D.N.Y. Mar. 28, 2025) (quoting *Balentine v. Doe*, No. 21-CV-1383, 2022 WL 17818553, at *7 (N.D.N.Y. Dec. 20, 2022)).  "[A] claim of conspiracy is viable only when the plaintiff sufficiently alleges a substantive violation." *Vicente v. Ayotte*, No. 24-CV-844, 2024 WL 4931194, at *4 (D. Conn. Dec. 2, 2024) (citing *Gaston v. Gavin*, 97-CV-1645, 1998 WL 7217, at *5 (S.D.N.Y. Jan. 8, 1998)).  Moreover, "[c]ourts have recognized a conspiracy 'can be alleged with only circumstantial evidence,' because 'conspiracies have long been recognized to be secretive by nature[.]'" *Salley*, 2025 WL 950991, at *10 (quoting *McCrae v. Town of Brookhaven*, 759 F. Supp. 3d 372, 396 (E.D.N.Y. 2024) and *Johnson v. City of New York*, No. 22-CV-3320, 2023 WL 11868258, at *11 (E.D.N.Y. Sept. 15, 2023)).

a. Excessive Force

As to the conspiracy claims associated with Plaintiff's excessive force allegations, Plaintiff claims that while he was in the clinic, he heard and saw "[T]herrien inform [] Brooks, Alemany, and Esquere that [] Blot was taking care [of the] video evidence, [of the October 4 assault] and that all they need[ed] [] to do is claim injuries to make it look as if Plaintiff [] assaulted them."  (*See* AC ¶ 78.)  Relatedly, he alleges that Blot and Therrien intentionally destroyed body-cam footage and surveillance footage of the October 4 assault.  (*See id*. ¶ 80.)

Moving Defendants argue that Plaintiff has failed to show a meeting of the minds related to the alleged cover-up of his assault.  (*See* Defs. Mem. 24–25.)  Specifically, moving Defendants argue that because Blot was "not present in that conversation," that Plaintiff overheard and therefore the Court cannot "attribut[e] conduct and intent to Blot's actions based on a conversation that Blot was not involved in."  (*See* Defs. Mem. 25.)

But Defendants' logic seems to contravene the widely accepted notion that a court may rely on circumstantial evidence of an agreement in conspiracy cases.  *See Palmer v. City of New York*, 564 F. Supp. 3d 221, 251 (E.D.N.Y. 2021) ("[C]onspiracies may 'be proven by circumstantial, rather than direct, evidence.'" (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  While perhaps not conclusive proof of a meeting of the minds, Therrien's statement that he and Blot had come to an agreement to get rid of video evidence of the assault makes it at least plausible that there was in fact such an agreement.  This conclusion is further bolstered by Plaintiff's allegation that the relevant video evidence was, in fact, deleted.  (*See* AC ¶ 80.)  Drawing all reasonable inferences in favor of Plaintiff, as it must at this stage, the Court concludes that Plaintiff's claim that there was an agreement, followed by evidence that the agreed upon actions (i.e., the deletion of video evidence of the assault) had come to pass,

plausibly suggests a meeting of the minds between the moving Defendants. *See Salley*, 2025 WL 950991, at *10 (concluding that circumstantial evidence that a meeting between the parties had occurred, coupled with actions consistent with an agreement to violate the plaintiff's rights, were sufficient to allege a meeting of the minds); *cf. Ying Li v. City of New York*, 246 F. Supp. 3d 578, 621 (E.D.N.Y. 2017) ("drawing all reasonable inferences in [ ] favor" of the plaintiff and declining to dismiss her Section 1983 conspiracy claim despite the fact that "[p]laintiff's pleading of her conspiracy claim is hardly robust").[7]

b. First Amendment Retaliation

As to Plaintiff's claim that Blot, Therrien, Rabideau, and non-moving Defendants engaged in a conspiracy to retaliate against him for his activities as a "jailhouse lawyer," Defendants argue that there is no evidence that Blot, Therrien, Rabideau knew that Plaintiff had engaged in any protected activity. (*See* Defs. Mem. 18; Defs. Rep. 10.) The Court agrees.

To state a claim for First Amendment retaliation, Plaintiff is required to plausibly plead: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Samuels v. New York Dep't of Lab.*, No. 23-CV-8004, 2025 WL 27737, at *4 (S.D.N.Y. Jan. 3, 2025) (quotation marks omitted) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). "The Second Circuit has 'instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a

_____

[7] Because moving Defendants do not dispute that the AC plausibly alleges either an overt act in furtherance of the conspiracy or the underlying excessive force claim, (*see generally* Defs. Mem), the Court does not address either issue here.

constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'"
*Jackson v. Prack*, No. 16-CV-7561, 2019 WL 6119010, at *10 (S.D.N.Y. Nov. 18, 2019)
(quoting *Dolan*, 794 F.3d at 195). "Thus, prisoner retaliation claims must be 'supported by
specific and detailed factual allegations.'" *Id.* (quoting *Dolan*, 794 F.3d at 195).

Defendants' argument—that Plaintiff has failed to allege that Therrien, Rabideau or Blot
knew of his protected activity—is, in essence, an argument that Plaintiff has failed to plead
causation. The Court agrees. First, to the extent that Plaintiff alleges Defendants assaulted him
or conspired to assault him in retaliation for his civil complaint in *Nova v. Rocker*, the Court
agrees that the AC does not sufficiently allege that Therrien, Rabideau or Blot knew of *Rocker*'s
existence. And it is significant that neither Therrien, Rabideau, nor Blot was named as a
defendant in *Rocker*, because, "as a general matter, it is difficult to establish one defendant's
retaliation for complaints against other[s].'" *Mateo v. Dawn*, No. 14-CV-2620, 2016 WL
5478431, at *8 (S.D.N.Y. Sept. 28, 2016) (alterations adopted) (quoting *Hare v. Hayden*, No. 09-
CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011)).

Second, to the extent Plaintiff suggests that Defendants retaliated against him for his
other civil complaints and grievances, (*see* AC ¶ 87), there are no non-conclusory allegations that
any of the three Defendants was at all aware of Plaintiff's other civil complaints or grievances
before he was assaulted, *see Jackson v. Annucci*, No. 20-CV-2008, 2021 WL 2581340, at *12
(S.D.N.Y. June 23, 2021) (dismissing a plaintiff's claim that the defendants were retaliating
against him for a grievance against a prison official because the plaintiff did not allege that
anyone "other than [that prison official] was aware of the grievance filed against her"); *Jackson*,
2019 WL 6119010, at *10 (S.D.N.Y. Nov. 18, 2019) (concluding that there were not sufficient
allegations of causation where the plaintiff did "not allege that either [d]efendant knew of the

grievance" in question); *Mateo*, 2016 WL 5478431, at *8 (concluding that causation had not been properly alleged where plaintiff did not "allege or otherwise suggest that [the defendants] even knew of the complaints filed against other correction officers").  Because Plaintiff has not alleged that moving Defendants were aware of either *Rocker* or any other grievances he filed, Plaintiff cannot allege that they conspired to take adverse action against him in retaliation for those grievances.

### 4. Intentional Infliction of Emotional Distress (IIED)

Plaintiff alleges that Blot, Therrien, and non-moving Defendants' assault and/or subsequent cover-up constituted an Intentional Infliction of Emotional Distress (IIED).  (*See* AC ¶¶ 96–98.)  Defendants argue that this claim must be dismissed because it is subsumed by Plaintiff's excessive force claim.  (*See* Defs. Mem. 26–27.)  The Court agrees.

"In New York, the elements of a claim for IIED are: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Pateman v. City of White Plains*, No. 17-CV-6156, 2020 WL 1497054, at *25 (S.D.N.Y. Mar. 25, 2020) (quoting *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).  "IIED is a disfavored claim under New York law and may 'be invoked only as a last resort.'"  *Nova v. Smith*, No. 19-CV-72, 2019 WL 5295165, at *3 (N.D.N.Y. Oct. 18, 2019) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014)).  Indeed, "where the challenged conduct 'falls well within the ambit of other traditional tort liability,' the New York Appellate Division courts have all held that IIED claims cannot be brought."  *Taylor v. Quayyum*, No. 16-CV-1143, 2021 WL 6065743, at *9 (S.D.N.Y. Dec. 21, 2021) (quoting *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal quotation marks and citations omitted)).

Accordingly, courts in the Second Circuit have dismissed IIED claims where they substantially overlap with available excessive force claims under federal law. *See, e.g., Hepburn v. City of New York*, No. 21-CV-4158, 2025 WL 1640205, at *18 (E.D.N.Y. June 10, 2025) ("Because the conduct at issue and any resulting damages are entirely encompassed by [the plaintiff's] claim[] [of] . . . excessive force, [the plaintiff's] IIED and NIED claims are dismissed."); *Farghaly v. City of New York*, No. 16-CV-6660, 2021 WL 4248844, at *10 (E.D.N.Y. Sept. 17, 2021) ("Since any claim arising out of [the defendant's] use of physical force is subsumed under [the plaintiff's] § 1983 excessive force [claim] . . . it is dismissed."); *Nova*, 2019 WL 5295165, at *3 ("In this case, to the extent plaintiff purports to assert an IIED claim against [a state] defendant based allegations that he physically assaulted plaintiff on March 1, 2018, because those allegations support an Eighth Amendment excessive force claim, the IIED claim must be dismissed."). Similarly, here, Plaintiff's IIED claim is dismissed because it is subsumed by his excessive force claim.

### 5. Fourteenth Amendment Due Process

Plaintiff alleges that Therrien violated his Due Process rights when he placed him in the SHU for a period of 270 days without providing any written determination as to why such a period of confinement was appropriate. (*See* AC ¶¶ 62–64.) Defendants argues that a 270-day confinement in the SHU, without more, does not implicate the Due Process Clause. (*See* Defs. Mem. 22.) The Court disagrees.

"In order to prevail in an action based on [Section] 1983 and the Fourteenth Amendment, a prison inmate must demonstrate a deprivation of a liberty interest protected by the Due Process Clause itself, or a violation of a state-created liberty interest." *Davis v. Collado*, No. 16-CV-7139, 2018 WL 4757966, at *9 (S.D.N.Y. Sept. 30, 2018) (citation omitted). "To present a due

process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration omitted) (quoting *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The Second Circuit has made clear that "[t]he Due Process Clause does not protect against 'every change in the conditions of confinement having a substantial adverse impact' on inmates if those changes are 'within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 478 (1995)). "Instead, the Due Process Clause protects against restraints or conditions of confinement that 'exceed the sentence in an unexpected manner.'" *Id*. (alterations omitted) (quoting *Sandin*, 515 U.S. at 484).

With respect to the first requirement, "[p]rison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin*, 515 U.S. at 484). When evaluating whether an inmate has suffered "atypical and significant hardship," courts must compare the conditions imposed upon that inmate with the conditions "endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999). When evaluating the severity of an inmate's hardship, courts should consider both the duration and the conditions of confinement. *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009).

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a

written statement of the disposition, including supporting facts and reasons for the action taken."

*Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). "Prison disciplinary proceedings," however,

"are not part of a criminal prosecution, and the full panoply of rights due a defendant in such

proceedings does not apply." *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (quoting *Wolff*

*v. McDonnell*, 418 U.S. 539, 556 (1974)).

Although the Second Circuit has "explicitly avoided a bright line rule that a certain

period of SHU confinement automatically fails to implicate due process rights," it has

nevertheless established certain "guidelines for use by district courts in determining whether a

prisoner's liberty interest was infringed." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

For example, the Second Circuit has explained that where a plaintiff is confined in SHU for an

"intermediate duration" of between 101 and 305 days, "development of a detailed record"

regarding the conditions of confinement as compared to "ordinary prison conditions" is required.

*Id.* at 65 (quotation marks omitted).

Here, Plaintiff alleges he was confined in the SHU for 270 days, which falls squarely

within, and at the higher end of, the "intermediate" range. Therefore, the Court declines to

dismiss Plaintiff's procedural due process claims based merely on the length of his confinement.

*See Chavez v. Gutwein*, No. 20-CV-342, 2021 WL 4248917, at *7 (S.D.N.Y. Sept. 17, 2021)

(noting that "a number of courts have concluded that where, as here, the duration of a plaintiff's

confinement in SHU falls in the 'intermediate' range, 'the fact-finding required by the Second

Circuit . . . cannot occur on a motion to dismiss'" (quoting *Mena v. Gutwein*, No. 19-CV-3882,

2020 WL 5370708, at *4 (S.D.N.Y. Sept. 8, 2020) and collecting cases); *Johnson v. Schiff*, No.

17-CV-8000, 2019 WL 4688542, at *22 (S.D.N.Y. Sept. 26, 2019) (declining to dismiss a

procedural due process claim where the plaintiff alleged their confinement fell in the

intermediate range).  Accordingly, the Court denies Defendants' Motion to Dismiss on this basis.[8]

### 6.   Fourteenth Amendment Equal Protection: Rabideau[9]

Plaintiff also appears to raise a selective enforcement challenge against Rabideau, Blot, Therrien, and non-moving Defendants.  (*See* AC ¶¶ 65–66, 74–77.)  Defendants argue that these claims against Rabideau must be dismissed because they fail to sufficiently allege his personal involvement in any constitutional violation.  (*See* Defs. Mem. 14.)  The Court agrees.

As noted above, to state a claim against a defendant under Section 1983, "a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation."  *Nova v. Martuscello*, No. 24-CV-1574, 2024 WL 1704707, at *1 (S.D.N.Y. Apr. 19, 2024); *see also Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  With respect to Rabideau's involvement in his disciplinary hearings, Plaintiff alleges:  that Rabideau uses a "tier system to systematically abuse prisoners of color," that he has a "99% conviction rate against Black and Hispanic [inmates]," and that he therefore intentionally discriminated against Plaintiff in his disciplinary hearings.  As noted in the Court's Order of Service in this case, "it is

---

[8] Defendants do not appear to challenge the second prong of the due process analysis—that Defendants deprived Plaintiff of a liberty interest as a result of insufficient process.  (*See generally* Defs. Mem.)  Accordingly, the Court does not address this prong of the analysis.

[9] Plaintiff styles this claim as a procedural due process claim, but because the specific allegations involving Rabideau only revolve around his use of race and ethnicity in the disciplinary process, (*see* AC ¶¶ 65–66), the Court construes the claim as one sounding in Equal Protection.  Moreover, because the AC provides few factual allegations against Rabideau, the Court's personal involvement analysis would be the same under either a Due Process or Equal Protection claim.

not clear if Plaintiff is alleging that Rabideau violated his rights during the disciplinary hearing, and he provides no facts showing the manner in which Rabideau discriminated against him." *Nova*, 2024 WL 1704707, at *1. This analysis is equally applicable here. Plaintiff does not allege that Rabideau was present for, or that he was otherwise involved in, his disciplinary proceedings at all. For these reasons, the Court again dismisses Plaintiff's claims against Rabideau. *See id*. (dismissing claims against Rabideau for failure to allege personal involvement); *see also Vasquez v. Bullock*, No. 25-CV-844, 2025 WL 1158072, at *2 (E.D.N.Y. Apr. 21, 2025) (dismissing claim against a supervisory defendant where the plaintiff failed to allege that defendant's personal involvement in a disciplinary hearing); *Thomas v. Washburn*, No. 13-CV-303, 2016 WL 6791125, at *3 (W.D.N.Y. Sept. 7, 2016) ("Nor is there any allegation by [the plaintiff] that either [defendant] was personally involved in [the plaintiff's] disciplinary hearings so as to have violated Plaintiff's due process rights in connection with such hearings"), *report and recommendation adopted*, No. 13-CV-303V, 2016 WL 6778794 (W.D.N.Y. Nov. 16, 2016).

       7.  <u>Unconstitutional Conditions</u>

Plaintiff also appears to challenge the conditions of his confinement while he was in the SHU at Green Haven. (*See* AC ¶¶ 114–120.) Specifically, Plaintiff alleges that his water pressure was shut off so that he was not able to flush the toilet, and that the cell was "extremely dirty and foul smelling" as a result. (*See* AC ¶¶ 121–123.) Defendants argue that these conditions are insufficiently serious to constitute a constitutional violation, (*see* Defs. Mem. 29–30), or, alternatively, that Plaintiff has failed to allege personal involvement, (*see id*. 29). The Court agrees that Plaintiff has failed to plead personal involvement.

"It is axiomatic that 'the conditions of a prisoner's confinement can give rise to an Eighth

Amendment violation.'" *Collins v. Fischer*, No. 15-CV-103, 2018 WL 1626528, at *5

(S.D.N.Y. Mar. 30, 2018) (alteration adopted) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185

(2d Cir. 2002) (per curiam)).  "Although the Constitution does not require 'comfortable' prison

conditions, the conditions of confinement may not 'involve the wanton and unnecessary

infliction of pain.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v.

Chapman*, 452 U.S. 337, 347, 349 (1981)).  In such cases, a prisoner may prevail only where he

alleges that:  "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he

was denied the minimal civilized measure of life's necessities, and (2) subjectively, the

defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference

to inmate health or safety." *Stapleton v. Pagano*, No. 19-CV-952, 2020 WL 4606320, at *5

(S.D.N.Y. Aug. 11, 2020) (quoting *Walker*, 717 F.3d at 125).

"To meet the objective element, the inmate must show that the conditions, either alone or

in combination, pose an unreasonable risk of serious damage to his health." *Id*. (quoting *Walker*,

717 F.3d at 125); *see also Seymore v. Dep't of Corr Servs*., No. 11-CV-2254, 2014 WL 641428,

at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that because society

does not expect or intend prison conditions to be comfortable, only extreme deprivations are

sufficient to sustain a conditions-of-confinement claim." (alteration adopted) (internal quotation

marks and citation omitted)).  "Thus, prison officials violate the Constitution when they deprive

an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary

living conditions." *Collins*, 2018 WL 1626528 at *5 (internal quotation marks and citation

omitted).  Moreover, conditions of confinement may be aggregated to rise to the level of a

constitutional violation, but "only when they have a mutually enforcing effect that produces the

deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation).

Under the "subjective" requirement, a defendant "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Phelps*, 308 F.3d at 185–86 (quoting *Farmer*, 511 U.S. at 837). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *4 (S.D.N.Y. Feb. 17, 2015) (same); *Reid v. Nassau Cnty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *17 (E.D.N.Y. Aug. 20, 2014) (same). "Allegations of mere negligence by prison officials will not support a claim under the Eighth Amendment." *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *5 (S.D.N.Y. Aug. 28, 2017).

As discussed above, Plaintiff alleges that during the eleven days he was in the SHU at Green Haven, his water was shut off and he was required to live in close proximity to the scent of his own feces and urine. (*See* AC ¶¶ 114, 121–123.) He further alleges that "complained during the entire period" that he was kept in the SHU, that he "wrote a grievance, to no avail,"

and that he informed the corrections officers "on a daily basis" of the nature of the conditions he was subjected to.  (*See* AC ¶¶ 121–122.)

"The Court need not decide whether [Plaintiff's] allegations suggest a sufficiently extreme deprivation to state a constitutional violation, because in any event, Plaintiff's claim cannot survive due to a failure 'to allege any facts to support the subjective element of the claim, i.e., that [moving Defendants] knew of and disregard[ed] an excessive risk to inmate safety.'" *Barry v. Russo*, No. 22-CV-3835, 2024 WL 965000, at *11 (S.D.N.Y. Mar. 5, 2024) (quoting *Bryant v. Capra*, No. 18-CV-10198, 2020 WL 508843, at *11 (S.D.N.Y. Jan. 31, 2020)). Specifically, Plaintiff's complaint fails to specify which Defendants, if any, were informed of the conditions in Plaintiff's cell.  (*See* AC ¶¶ 114, 121–123.)  Absent such an allegation, or any other allegation that any particular Defendant created the conditions in Plaintiff's cell, the Court cannot conclude that Plaintiff has plausibly pled the subjective element of an unconstitutional conditions claim.  *See Barrere v. County of Nassau*, No. 18-CV-3562, 2024 WL 1258846, at *10 (E.D.N.Y. Mar. 24, 2024) (holding that "the Court cannot find that any prison official 'knew of and disregarded' the conditions" in the plaintiff's cell where the plaintiff failed to specify which defendant he spoke to regarding the conditions he endured); *Barry*, 2024 WL 965000, at *11 (rejecting the plaintiff's unconstitutional conditions claim where he failed to specify how any of the defendants were made aware of his complaints).  Therefore, Plaintiff's conditions of confinement claim is dismissed.

### III.  Conclusion

For the foregoing reasons, the Court grants moving Defendants' Motion in part and denies it in part.  Specifically, the Court grants moving Defendants' Motion as to Plaintiff's (1) failure to protect claims against Blot, Martuscello, and Mitchell; (2) state-created danger claim

against Martuscello; (3) conspiracy to engage in First Amendment retaliation claim against Blot,

Therrien, Rabideau; (4) IIED claim against Blot and Therrien; (5) Fourteenth Amendment Equal

Protection claims against Rabideau; (6) conditions of confinement challenge.  The Court denies

Defendants' motion as to (1) all non-moving Defendants, and as to Plaintiff's (2) conspiracy to

commit excessive force claim; (3) Fourteenth Amendment Due Process claim.

If Plaintiff wishes to file a second amended complaint alleging additional facts and

otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the

date of this Opinion & Order.  Plaintiff is further advised that the second amended complaint will

completely replace, not supplement, the Amended Complaint.  The second amended complaint

must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes

the Court to consider.

The Clerk of Court is respectfully directed to close the pending Motion (Dkt. No. 35),

and to make Defendant Martuscello's name on the docket consistent with the caption in this

Opinion and Order.


SO ORDERED.

Dated:    September 24, 2025
          White Plains, New York

_____
     KENNETH M. KARAS
     United States District Judge